IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLOBAL NET LEASE, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BLACKWELLS CAPITAL LLC, ) <br> BLACKWELLS ONSHORE I LLC, JASON ) <br> AINTABI, RELATED FUND ) <br> MANAGEMENT LLC, JIM LOZIER, and ) <br> RICHARD O'TOOLE, ) <br> ) <br> Defendants. ) | No.  1:22-cv-10702 |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Global Net Lease, Inc. ("GNL" or the "Company"), by and through its undersigned counsel, for its claims against Defendants alleges the following based upon personal knowledge as to the Company's own acts and upon information and belief as to all other matters.

\*     \*     \*

Defendants have filed materials with the United States Securities and Exchange Commission ("SEC") to solicit proxies from the Company's stockholders to vote for Defendants' putative director nominees and stockholder proposals in connection with its upcoming annual stockholder meeting. Indeed, Defendants have suggested they are going to run successive proxy contests to try to gain control of the Company's board.

Yet, as described below, Defendants' proxy materials filed with the SEC are wildly and materially omissive: they fail to inform the Company's stockholders that the Defendants have entered into an undisclosed "joint venture" for the purpose of trying to force the Company into a new external advisory agreement that would earn themselves millions. Defendants' anodyne suggestions in the proxy materials that the purpose of their proxy solicitation is to create value for

all stockholders is patently misleading, and should be immediately corrected by issuance of corrective disclosures to ensure that the Company's stockholders are fully informed of Defendants' undisclosed joint venture to make themselves money from the Company *before* the Company's upcoming annual stockholder meeting.

On October 25, 2022, the Defendants filed a press release with the SEC pursuant to Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-12 promulgated thereunder for the purpose of soliciting proxies from the Company's stockholders (the "Press Release," attached as Exhibit A hereto). The Press Release, which had been issued by Blackwells Capital LLC ("Blackwells"), announced the purported nomination by Blackwells' affiliate, Blackwells Onshore I LLC, of two individuals to the board of directors (the "Board") of the Company. The Press Release further states Blackwells' intention to nominate candidates at successive annual meetings of the Company to eventually gain control of the Board of the Company. On December 1, 2022, Defendants filed a Preliminary Proxy Statement pursuant to Section 14(a) of the Exchange Act and Rule 14a-6 promulgated thereunder for the purpose of soliciting proxies from the Company's stockholders to vote for Blackwells' purported nominees (the "Preliminary Proxy Statement," attached as Exhibit B hereto, and, together with the Press Release, the "Proxy Materials").

The Proxy Materials criticized the Company's agreement with its existing external investment advisor (the "Advisory Agreement"), as well as several corporate governance practices enshrined in the Company's charter and by-laws. They indicate that the purported nominees, if elected, would seek to replace the Company's current external manager with a new manager governed by a new Advisory Agreement.

Blackwells is described in the Proxy Materials simply as an investor who is engaging in stockholder activism "to help unlock value" for stockholders of the Company.  Thus, the Proxy Materials indicate that Blackwells is pursuing termination of the Advisory Agreement to increase the value of its own investments in shares of the Company.

The Proxy Materials, however, misleadingly omit that Blackwells has a financial interest in terminating the Advisory Agreement that is separate from the shares it holds.  Specifically, they fail to disclose that Blackwells has formed a joint venture or has related agreements, arrangements or understandings with Related Fund Management LLC and/or its affiliates  ("Related") for purposes of replacing the Company's investment advisor with Related or one of Related's affiliates, which may result in Blackwells receiving a cut of future advisory fees.  Although the Proxy Materials disclosed that Related is one of the participants in Blackwells' proxy solicitation and that one of its nominees works for a company that appears to be affiliated with Related, they do *not* disclose the joint venture or any of the related agreements, arrangements, or understandings between Blackwells and Related (the "Blackwells-Related Joint Venture").  The Company only learned of the Blackwells-Related Joint Venture and its purpose after a private meeting with one of the Defendants, Jason Aintabi.

Without disclosure of the Blackwells-Related Joint Venture and thus Blackwells' secret motive behind seeking to elect new directors next year as well as additional directors in future years, Blackwells' stated purpose for the solicitation, to "unlock value" for stockholders, is materially incomplete and misleading.  Corrective disclosures are necessary, otherwise stockholders will be deceived into believing that Blackwells' interests align entirely with their own.

The Company respectfully asks that the Court order Defendants to make corrective disclosures rectifying their materially false and misleading statements, and enjoin them from soliciting any proxies for the Company's 2023 annual meeting of stockholders until corrective disclosures are issued and the Company's stockholders have the opportunity to absorb that information.

**PARTIES**

1. Plaintiff Global Net Lease, Inc. ("GNL" or "the Company") is a Maryland corporation operating as a real estate investment trust for United States federal income tax purposes. It is externally managed by Global Net Lease Advisors, LLC (which manages the Company's day-to-day business as its external advisor) and Global Net Lease Properties, LLC (which manages and leases the Company's properties as its external property manager). Global Net Lease Advisors, LLC and Global Net Lease Properties, LLC are affiliates of AR Global Investments, LLC ("AR Global").

2. Defendant Blackwells Capital LLC ("Blackwells") is an investment firm organized as a New York limited liability company. As of October 25, 2022, it beneficially owned 265,000 shares of the Company.

3. Defendant Blackwells Onshore I LLC ("Blackwells Onshore") is an investment firm organized as a New York limited liability company. It is an affiliate of Blackwells. As of October 25, 2022, it beneficially owned 100 shares of the Company. Blackwells Onshore has purported to nominate Richard L. O'Toole and Jim Lozier to the Company's board of directors and submit six stockholder proposals.

4. Defendant Jason Aintabi wholly owns both Blackwells and Blackwells Onshore, and serves as the President & Secretary and the managing member, respectively. As of October

25, 2022, he beneficially owned 285,100 shares of the Company. Aintabi is a resident of New York.

5. Defendant Related Fund Management LLC ("Related") is an investment manager specializing in the real estate sector and is organized as a Delaware limited liability company with a principal place of business in New York. As of October 25, 2022, it beneficially owned 1,679,232 shares of the Company. Related is disclosed in the Proxy Materials as a participant in Blackwells' proxy solicitation.

6. Defendant Richard L. O'Toole, a New York resident, was putatively nominated to the board of the Company by Blackwells Onshore. He is an Executive Vice President of Related Companies, which is affiliated with Related.

7. Defendant Jim Lozier was putatively nominated to the board of the Company by Blackwells Onshore.

## JURISDICTION AND VENUE

8. This action arises under Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a), and the applicable rules and regulations of the SEC. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and personal jurisdiction over the Defendants under Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. Venue in this District is proper, under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391. Various acts or transactions constituting the offenses described herein, relating to public statements by New York-based Blackwells, occurred in or targeted the Southern District of New York.

## FACTUAL BACKGROUND

### Blackwells' Press Release Presents Blackwells as a Stockholder Interested in Creating Value for All

10. On October 24, 2022, Blackwells Onshore submitted notice stating its intent to nominate Richard L. O'Toole and Jim Lozier to the Company's Board of Directors and submit six stockholder proposals at the Company's 2023 annual stockholder meeting.

11. The next day, Blackwells issued the Press Release announcing the putative nominations and stockholder proposals. Blackwells also announced its intent to propose two additional independent directors for the 2024 Annual Meeting of Stockholders. The Press Release was also filed with the SEC as proxy materials pursuant to Section 14(a) of the Exchange Act and Rule 14a-12 promulgated thereunder.

12. The Press Release, in relevant part, states:

> Blackwells Capital LLC (together with its affiliates "Blackwells"), today announced it has nominated two exceptional candidates for election to the board of directors of Global Net Lease Inc. (NYSE: GNL) ("Global Net Lease," "GNL" or the "Company") at the upcoming 2023 Annual Meeting of Shareholders (the "2023 Annual Meeting") and plans to pursue a number of corporate governance initiatives. Blackwells, together with its affiliates, is one of the largest owners of common stock and equivalents of GNL.
>
> Additionally, Blackwells announced its intent to propose two additional independent directors for the 2024 Annual Meeting of Shareholders (the "2024 Annual Meeting").
>
> Blackwells' independent director nominees will pursue, among others, the termination of the Company's off-market management agreement (the "Management Agreement") with AR Global Investments, LLC ("AR Global") replacing it with one that is far more cost effective, is more in-line with market practices, and that stops enriching a select group of related parties tied to the current external manager, AR Global.
>
> Jason Aintabi, Chief Investment Officer of Blackwells, said, "To think that a triple net lease REIT—with 99% cash rent collections, a weighted average lease term of almost 9 years and a 3.5x interest

coverage ratio on long-term fixed funding rates that are below present U.S. treasury yields—has performed as abysmally as GNL has performed, is senseless. We believe the board of directors and management have been, for years, complicit in corporate piracy and are solely to blame. Such behavior should not be permitted in any public marketplace."

Blackwells believes that almost nowhere else in the public markets are stockholders more in need of a reconstituted board of directors that is prepared to reset commercial arrangements, engage with established and credible managers that can work with the Company on market terms, and review any and all alternatives that can maximize value for stockholders.

*The Siphoning of Shareholder Money to Nelson, Weil and AR Global Must End*

Currently, more than 1 out of every 10 dollars that GNL makes is spent on payments to AR Global. Since 2016, fees of **more than $200 million dollars** (representing more than 10% of revenues during every reporting period) have been paid to AR Global.

All the while, GNL's stockholders have suffered through a 61% decline in share price while the U.S. Diversified REIT Index returned a positive 48%, and the S&P 500 returned a positive 78%. GNL trades at almost a 50% discount to Net Asset Value, and Blackwells expects that the gap will not be closed until stockholders vote to put an end to what Blackwells believes is a raiding of GNL's shareholder coffers.

*AR Global Management Agreement is Off-Market and Must Be Terminated*

GNL's total operating load represented 4.1% of the Company's total book value for the 2021 fiscal year, producing a sum that would cover the management of a REIT many times larger, let alone a triple net REIT the size of GNL. In fact, there is not a single triple net REIT – other than Necessity Retail REIT (RTL), another company managed by AR Global – with fees remotely approaching those that are currently being charged at GNL.

Blackwells believes that stockholders should no longer bear the cost of the castigating Management Agreement and is firmly committed to supporting nominees that will seek its immediate termination, without any termination fee paid to AR Global.

7

> Further, Blackwells plans to pursue all legal remedies available, including potentially seeking personal liability damages against Messrs. Nelson and Weil in the event that the Management Agreement with AR Global is not promptly terminated as indicated above, or in the event that the Board or management engage in any activities that will interfere with the shareholder voter franchise prior to shareholders exercising their rights at the ballot box.
>
> *GNL is in Need of Corporate Governance Overhaul*
>
> In September, Blackwells communicated its frustrations to the Board in a letter, attached hereto. As indicated in its letter, Blackwells plans to reform GNL as a leader in proper governance standards by pursuing the following agenda:
>
> . . . .
>
> Through the course of its campaign, Blackwells will demonstrate that a conflicted group of managers have caused tremendous harm to shareholders and that there is no alternative other than to purge this group and reset corporate governance and proper commercial practices.
>
> Press Release.

13. The Press Release describes Blackwells as follows:

> Blackwells Capital was founded in 2016 by Jason Aintabi, its Chief Investment Officer. Since that time, it has made investments in public securities, engaging with management and boards, both publicly and privately, to help unlock value for stakeholders, including stockholders, employees and communities. Blackwells' investments in real estate have ranged from property development and management to REITs and adjacent real estate activities, including financing, origination, and managing real estate backed securities, including direct mezzanine and equity investments. Throughout their careers, Blackwells' principals have invested globally on behalf of leading public and private equity firms and have held operating roles and served on the boards of media, energy, technology, insurance and real estate enterprises.
>
> Press Release.

**Blackwells Files a Preliminary Proxy Statement That Likewise Fails to Disclose the Blackwells-Related Joint Venture**

14. On December 1, 2022, pursuant to Section 14(a) of the Exchange Act and Rule 14a-6 promulgated thereunder, Defendants filed the Preliminary Proxy Statement with the SEC that solicits proxies to vote for Blackwells' purported nominees and stockholder proposals.

15. The Preliminary Proxy Statement in relevant part states:

> Blackwells Onshore I LLC ("Blackwells Onshore"), Blackwells Capital LLC ("Blackwells Capital") and Jason Aintabi (collectively with Blackwells Onshore and Blackwells Capital, "Blackwells" or "we"), together with the other participants in this solicitation, own an aggregate of [•] shares of common stock, $0.01 par value per share (the "Common Stock"), of Global Net Lease, Inc., a Maryland corporation (the "Company"), representing approximately [•]% of the outstanding Common Stock, making Blackwells one of the Company's largest stockholders. For the reasons set forth in the attached Proxy Statement, we believe changes to the composition of the Board of Directors of the Company (the "Board") and to the Company's governance policies are necessary in order to help ensure that the Company is operating in a manner consistent with the best interests of all stockholders.
>
> We believe there is significant potential in the Company's assets, people and business relationships. However, we are concerned that the Board is not taking appropriate action to modernize the Company's governance, which, in our view, has resulted in extreme underperformance and mismanagement. We strongly believe that the Company will not improve its performance without fundamental change to ensure that the interests of stockholders — the true owners of the Company — are appropriately represented in the boardroom.
>
> . . . .
>
> We further believe that the Blackwells Proposals we have submitted will help modernize the Company's corporate governance policies, hold the Board and the Company more accountable to the Company's stockholders and prevent potential conflicts of interest and loyalties.
>
> . . . .
>
> We believe that the Company's Board of Directors (the "Board") must be reconstituted to further ensure that the interests of stockholders are appropriately represented in the boardroom.

. . . .

**REASONS FOR THE SOLICITATION**

Blackwells and the other Participants in this solicitation collectively own approximately [•]% of the Common Stock. Blackwells has nominated two highly qualified Board candidates — Mr. Lozier and Mr. O'Toole — each of whom is prepared and committed to objectively evaluate strategic alternatives of the Company to help unlock value for all stockholders. The professionals that Blackwells has nominated have extensive experience in the real estate industry and with public company governance, and, if elected, they would have no relationship with the Company's advisor, AR Global Investments, LLC ("AR Global"), other than in their capacity as directors of the Company. If elected, the Blackwells Nominees will be independent of AR Global's influence and intend to fully review the Company's business, assets, capital structure, capital allocation priorities, strategies, operations, policies and personnel to help ensure that the Company is being operated optimally on behalf of all stockholders.

As one of the Company's largest stockholders, we are disappointed with the current Board and management. We believe that there is significant potential in the Company's assets, people and business relationships, but that poor corporate governance and the Company's relationship with AR Global make it ill-equipped to succeed as a public company. Change in the Board's composition is needed to modernize the Company's governance and provide an objective and independent review of all strategic alternatives. Specifically, we believe the Company will not improve its performance without fundamental change to what we believe to be extreme underperformance and mismanagement, an off-market management agreement with AR Global and the Board and management's blatant disregard for stockholders.

***The Current Board Has Presided Over Negative Returns for Stockholders***

The Company has underperformed significantly. Over the past five years, the Company's stock is down 39.3% compared to each of the MSCI U.S. REIT Index and S&P 500, which are up 20.3% and 50.9%, respectively. Further, the Company trades at one of the largest discounts to its Net Asset Value ("NAV") of any publicly traded triple net REIT, with the largest being The Necessity Retail REIT, Inc. ("RTL"). As of close on November 25, 2022, the Company traded at a 31.9% discount to NAV compared to a REIT

industry weighted average of only a 9.1% discount to NAV. The Company has the lowest implied enterprise value to EBITDA multiple and the second-lowest price to funds from operations multiple of its peer group of triple net REITs (with RTL being the lowest). As of November 25, 2022, triple net REITs have on average an implied enterprise value to EBITDA multiple of 17.8x, and price multiple to 2022 estimated funds from operations of 15.6x, while the Company has an implied enterprise value to EBITDA multiple of 12.6x, and price multiple to 2022 estimated funds from operations of 7.8x.

***The Company's Management Agreement with AR Global is Off-Market***

Further, the Company continues to spend significant amounts of money on what Blackwells believes is an off-market management agreement between the Company and its external manager, AR Global. When compared to its peers, there is not another triple net REIT — other than RTL, another company managed by AR Global — with management fees remotely approaching those that are currently being charged at the Company. Further, the Company's total operating load represented 4.1% of the Company's total book value for the 2021 fiscal year, compared with a peer average of 1.6%. Since 2016, fees of more than $200 million (representing more than 10% of revenues during each yearly reporting period) have been paid to AR Global. All the while, the Company's stockholders have suffered through a 52.9% decline in share price while the U.S. Diversified REIT Index returned a 62.3% increase, and the S&P 500 returned a 87.9% increase. As noted above, the Company trades at almost a 32% discount to NAV, and Blackwells expects that the gap will not be closed until stockholders vote to put an end to what Blackwells believes is a raiding of the Company's stockholder coffers.

. . . .

**INFORMATION ABOUT THE BLACKWELLS NOMINEES**

. . . .

If elected, the Blackwells Nominees will be entitled to such compensation from the Company as is consistent with the Company's practices for services of non-employee directors. On October 24, 2022, each Blackwells Nominee entered into an indemnification agreement (collectively, the "Indemnification Agreements") with Blackwells Onshore in connection with his

11

nomination to the Board.  Pursuant to the Indemnification Agreements, Blackwells Onshore has agreed to indemnify each of the Blackwells Nominees against certain claims arising from the solicitation of proxies for the election of the Blackwells Nominees and for the Blackwells Proposals. Also on October 24, 2022, Blackwells Onshore, Blackwells Capital, RFM, Mr. Aintabi and each of the Blackwells Nominees entered into a Joint Filing and Solicitation Agreement pursuant to which, among other things, each of Blackwells Onshore, Blackwells Capital, RFM, Mr. Aintabi and the Blackwells Nominees agreed to the joint filing on behalf of each of them to allow for the solicitation of proxies for the election of the Blackwells Nominees and in favor of the Blackwells Proposals. Other than as described in this Proxy Statement, there are no arrangements or understandings between or among any Blackwells Nominee and any other person pursuant to which any Blackwells Nominee was or is to be selected as a director or nominee.

. . . .

**ADDITIONAL PARTICIPANT INFORMATION**

. . . .

Other than as set forth in this Proxy Statement, there are no material proceedings to which any Participant or any associate of any Participant has been a party which is adverse to the Company or any of its subsidiaries, nor does any Participant or any associate of any Participant have a material interest adverse to the Company or any of its subsidiaries. Except as described herein, no Participant nor any of his or its respective associates has any interest in the matters to be voted upon at the Annual Meeting, other than an interest, if any, as a stockholder of the Company. Other than as disclosed in this Proxy Statement, there are no arrangements or understandings between Blackwells or its affiliates and the Blackwells Nominees or any other person pursuant to which the nominations are to be made by Blackwells.

Except as set forth in this Proxy Statement (including the Schedules hereto), (i) during the past ten years, no Participant has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors); (ii) no Participant directly or indirectly beneficially owns any securities of the Company; (iii) no Participant owns any securities of the Company which are owned of record but not beneficially; (iv) no Participant has purchased or sold any securities of the Company during the past two years; (v) no part of the purchase price or market value of the securities of the Company

owned by any Participant is represented by funds borrowed or otherwise obtained for the purpose of acquiring or holding such securities; (vi) no Participant is, or within the past year was, a party to any contract, arrangements or understandings with any person with respect to any securities of the Company, including, but not limited to, joint ventures, loan or option arrangements, puts or calls, guarantees against loss or guarantees of profit, division of losses or profits, or the giving or withholding of proxies; (vii) no associate of any Participant owns beneficially, directly or indirectly, any securities of the Company; (viii) no Participant owns beneficially, directly or indirectly, any securities of any parent or subsidiary of the Company; (ix) no Participant or any of his or its associates, nor any immediate family member of any Participant or any Participant's associates, had a direct or indirect interest in any transaction, or series of similar transactions, since the beginning of the Company's last fiscal year, or is a party to any currently proposed transaction, or series of similar transactions, to which the Company or any of its subsidiaries was or is to be a party, in which the amount involved exceeds $120,000; (x) no Participant or any of his or its associates has any arrangement or understanding with any person with respect to any future employment by the Company or its affiliates, or with respect to any future transactions to which the Company nor any of its affiliates will or may be a party; (xi) no Participant has a substantial interest, direct or indirect, by securities holdings or otherwise in any matter to be acted on at the Annual Meeting; (xii) no Participant holds any positions or offices with the Company; (xiii) no Participant has a family relationship with any director, executive officer, or person nominated or chosen by the Company to become a director or executive officer; and (xiv) no companies or organizations, with which any of the Participants has been employed in the past five years, is a parent, subsidiary or other affiliate of the Company. Except as set forth in this Proxy Statement (including the Schedules hereto), (i) there are no material proceedings to which any Participant or any of his or its associates is a party adverse to the Company or any of its subsidiaries or has a material interest adverse to the Company or any of its subsidiaries, and (ii) none of the events enumerated in Item 401(f)(1)-(8) of Regulation S-K occurred during the past ten years.

Blackwells has not paid any compensation to the Blackwells Nominees as a result of their nomination for election as directors of the Company by Blackwells at the Annual Meeting. There are no other arrangements or understandings with either of the Blackwells Nominees, other than as set forth herein.

Preliminary Proxy Statement.

### In a Private Meeting, Blackwells First Discloses Its Joint Venture with Related

16.     On November 7, 2022, in a meeting with certain of the Company's representatives, Mr. Aintabi disclosed the Blackwells-Related Joint Venture for the first time as well an intent to have the Company replace its external manager with Related or one of Related's affiliates.  During the meeting, Mr. Aintabi made reference on several occasions to a "joint venture" between Blackwells and Related and a desire to have the Company conduct an external bid process to replace its external advisor and associated Advisory Agreement, in which Related would serve as a "stalking horse" bidder and/or negotiate directly with the Company to replace its existing advisor.

17.     Based on this information and Blackwells' failure to disclose this information to the public, it appears that Blackwells seeks to have new directors elected by the stockholders because it wants to install Related as the new external manager to enrich Related and itself with management fees from the Company.  Blackwells thus has a financial interest in replacing the Company's manager separate and independent from its shareholdings due to the Blackwells-Related Joint Venture.

### The Proxy Materials Are False and Misleading Because They Fail to Disclose Blackwells' and Related's Joint Venture

18.     By identifying Blackwells as investors in GNL stock and by repeatedly emphasizing stockholder value, the Proxy Materials communicated to stockholders that Blackwells was simply an investor that wanted to make changes because it wanted to improve the Company's stock price for the benefit of all stockholders.  But nowhere in the Proxy Materials is the Blackwells-Related Joint Venture disclosed.

19.     Blackwells' self-portrayal as an agent that "unlock[s] value" for stockholders is therefore false, misleading, and materially incomplete.  *See also* Preliminary Proxy Statement

("Except as described herein, no Participant nor any of his or its respective associates has any interest in the matters to be voted upon at the Annual Meeting, other than an interest, if any, as a stockholder of the Company.")  In fact, it has financial interests in replacing the Company's external manager that diverge from those of other stockholders.

20. The Proxy Materials indicate that Blackwells intends for the Company to find a new manager.  Yet, nowhere in the Proxy Materials is it disclosed that Blackwells intends to install Related as the new manager.

`
## CLAIMS FOR RELIEF

**COUNT I:**
**VIOLATION OF SECTION 14(a) OF THE EXCHANGE ACT**
**AND SEC RULE 14a-9**

21. The Company hereby incorporate the allegations set forth above as if fully set forth herein.

22. Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), prohibits soliciting proxies in violation of SEC rules.

23. Rule 14a-9 under the Exchange Act, 17 C.F.R. § 240.14a-9(a), prohibits making a solicitation "by means of any . . . communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ."

24. The Press Release is a solicitation pursuant to Rule 14a-1(*l*), 17 C.F.R. § 240.14a-1(*l*) and Rule 14a-12, 17 C.F.R. § 240.14a-12.

25. The Preliminary Proxy Statement is a solicitation pursuant to Rule 14a-1(*l*), 17 C.F.R. § 240.14a-1(*l*) and Rule 14a-6, 17 C.F.R. § 240.14a-6.

26.     Blackwells' portrayal of itself as seeking to replace the Company's investment advisor is false, misleading, and materially incomplete, independently and in combination, by reason of the Proxy Materials' failure to disclose the Blackwells-Related Joint Venture, Blackwells' plan to install Related or an affiliate as the new manager and the fact that Blackwells has financial interests in replacing the Company's external manager that diverge from those of the stockholders.

27.     The Proxy Materials thus fail to permit an ordinary stockholder of the Company to assess the extent to which Blackwells' motivations in attempting to nominate new directors diverge from their own, as well as Blackwells' true intentions for the Company.

28.     Absent injunctive relief, the Company and the Company's stockholders will be irreparably harmed.  The Company's stockholders are entitled to have a full and accurate understanding of the Defendants' interests and plans for the Company.  Thus, Blackwells' above-described false and misleading statements deprive the Company's stockholders of the information they need to vote on an informed basis.  Blackwells has made clear its intention to proceed on this basis, and thus this harm is continuing and will likely increase.

29.     Defendants consequently violated Section 14(a) of the Exchange Act and Rule 14a-9(a) promulgated thereunder.  The Company has no adequate remedy at law for this violation.

**PRAYER FOR RELIEF**

WHEREFORE, the Company respectfully requests that the Court enter judgment against Defendants as follows:

(a) declaring that the Proxy Materials violate Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b) ordering that Defendants publicly correct their material misstatements or omissions, including by filing with the SEC materially complete and accurate disclosures required by Section 14(a) of the Exchange Act (the "Corrective Statements");

(c) preliminarily and permanently enjoining Defendants from publishing any soliciting materials, or soliciting, until they file the Corrective Statements and the Company's stockholders have enough time to absorb the information, and from voting any proxies given to them prior to their filing of the Corrective Statements;

(d) preliminarily and permanently enjoining Defendants from committing any further violations of the federal securities laws;

(e) awarding the Company costs; and

(f) granting any other relief the Court deems proper.

| | |
|---|---|
| Dated: December 19, 2022 | By:  /s/ Isaac S. Greaney<br>Isaac S. Greaney<br>SIDLEY AUSTIN LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>(212) 839-7324<br>igreaney@sidley.com<br><br>*Attorney for Plaintiff* |